FILED
02 NOV -8 AM 9: 02
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| MARY WHITSON, et al., | } | |
| | } | |
| Plaintiffs, | } | |
| | } | |
| v. | } | CV-02-BE-0388-W |
| | } | |
| ARVIN INDUSTRIES, INC., et al., | } | |
| | } | |
| Defendants. | } | |
| | } | |

ENTERED
NOV 8 '02

## MEMORANDUM OPINION

This case is before the court on Defendant ArvinMeritor's Motion for Summary Judgment. The court held a hearing on this issue on November 4, 2002. Having considered the briefs, evidentiary submissions, and arguments of counsel, the court granted ArvinMeritor's Motion for Summary Judgment for the reasons stated on the Record and supplemented in this opinion.

### I. Facts

Arvin Industries, Inc. operated a manufacturing facility in Fayette, Alabama. The production and maintenance employees of the Fayette Plant are represented by the International Union, United Automotive, Aerospace, and Agricultural Implement Workers of America and its Local Union No. 759 ("UAW"). Arvin Industries and the UAW negotiated a collective bargaining agreement ("CBA") effective from June 9, 1999, to September 1, 2005, regarding conditions of employment at the Fayette Plant. Meritor Automotive, Inc. merged with Arvin Industries on July 7, 2000, and the successor entity ArvinMeritor succeeded to Arvin Industries's

obligations under the CBA.

The CBA does not obligate ArvinMeritor to maintain a specified amount of production or employ a specified number of employees at the Fayette Plant. *See* Affidavit of Ronald R. Snyder, at ¶ 4. The CBA does allow for the relocation of work and for workforce reduction. Snyder Affidavit, at ¶ 4. The CBA does provide through a Side Letter, however, that all production operations at the Fayette Plant would not be permanently and completely closed. Pl. Ex. 1, at 71. In addition, Article XV of the CBA clearly states that "<u>except to the extent otherwise agreed between the Company and the Union</u>, during the term of this Agreement, there shall be no negotiations between the parties concerning rates of pay, wages, hours of employment or other conditions of employment." Pl. Ex. 1, at 53 (emphasis added). Thus, the CBA contains language that allows the union and the company to "otherwise agree" to renegotiate employment issues during the term of the CBA .

Despite the langauge in the CBA preventing a complete closure of the Fayette Plant, ArvinMeritor decided to close the Plant in July, 2001. On August 17, 2001, ArvinMeritor issued a "Notice of Closing," giving notice of its intention to close the Fayette Plant on June 30, 2002. On August 21, 2001, the UAW informed ArvinMeritor that the Bargaining Unit had authorized the UAW to negotiate with ArvinMeritor regarding the closure of the plant. These negotiations led to the execution of a Plant Closing Agreement ("PCA") between ArvinMeritor and the UAW. The PCA was ratified by a vote of the employees in the Bargaining Unit on December 21, 2001.

Unlike the CBA, the PCA allows for the complete and permanent closure of the Fayette Plant. Def. Ex. 1, at 1. In exchange for the closure agreement, ArvinMeritor agreed to provide benefits to affected employees that are not provided for under the CBA including severance pay,

a signing bonus, outplacement services, enhanced retirement benefits, extended medical and life insurance coverage, and tuition reimbursement. Def. Ex. 1, at 2-5. The PCA states that its provisions "shall prevail over an inconsistent provisions in the [CBA]. Def. Ex. 1, at 1. ArvinMeritor is closing down the plant pursuant to the PCA and states that all employees who have been terminated have received the benefits provided by the PCA.

Plaintiffs, sixty employees of ArvinMeritor, filed suit on February 13, 2002, alleging a "hybrid" § 301 claim under the Labor Management Relations Act, 29 U.S.C. § 185. Specifically, plaintiffs allege (1) that Arvin breached the CBA by closing the Fayette Plant and (2) that the UAW breached its duty of fair representation by failing to pursue employee grievances that have resulted from the closure. Defendant ArvinMeritor filed a Motion for Summary Judgment on May 3, 2002.

## II. Applicable Law

In a hybrid § 301 suit like the case at hand, a plaintiff must show "that the employer breached the collective bargaining agreement and that the union breached its duty of fair representation." *Adcox v. Teledyne*, 21 F.3d 1381, 1386 (6th Cir. 1994) (emphasis added). Thus, to survive a motion for summary judgment, plaintiffs must come forth with evidence substantiating their claim against ArvinMeritor for breach of the CBA and their claim against the UAW for breach of the duty of fair representation.

Because Defendant ArvinMeritor filed the Motion for Summary Judgment that is at issue, the court only addresses the law involving breach of CBA claims by an employer under § 301. As a general rule, a union and an employer "may assent to modification of existing collective bargaining agreements, even without an express provision to that effect." *Local 1316, Int'l Bhd.*

*of Elec. Workers v. Superior Contractors & Assoc., Inc.*, 608 F. Supp. 1246 (N.D. Ga. 1985) (citing *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local 1*, 611 F.2d 580, 584 (5th Cir. 1980)).

The principle that parties to a CBA may agree to modify that agreement has been applied in a situation involving a negotiated PCA. In *Adcox v. Teldyne, Inc.*, 21 F.3d 1381, 1383 (6th Cir. 1984), the Sixth Circuit Court of Appeals affirmed a district court's summary judgment ruling against a plaintiffs' § 301 claim involving a negotiated PCA. Similar to the case at hand, the plaintiffs in *Adcox* sued their employer and their union after the union negotiated a PCA that altered a CBA. The Sixth Circuit found that "because the [PCA] superseded the 1988 collective bargaining agreement . . . upon which plaintiffs' section 301 claim against Teledyne depends, there was no breach here that would support a section 301 claim." 21 F.3d at 1386.

The Eleventh Circuit Court of Appeals has only addressed one case involving a § 301 claim against a company and union regarding a plant closing. In *Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988), the Eleventh Circuit affirmed a district court's summary judgment ruling in favor of the defendants because plaintiffs could not show that the union breached its duty of fair representation. Thus, the *Parker* case is not determinative of the issues before this court regarding Arvin's Motion for Summary Judgment because *Parker* focused on the requirements a plaintiff must show to establish a union's breach of duty of fair representation. Furthermore, although the *Parker* case involved a plant closing, the plaintiffs' § 301 claims focused on issues surrounding arbitration disputes that arose after the plant closing. However, in discussing the law involving § 301 claims, *Parker* cited a Seventh Circuit case, *Dwyer v. Climatrol*, 544 F.2d 307 (7th Cir. 1976), that closely resembles the case at hand.

In *Dwyer*, the Seventh Circuit affirmed a district court's grant of summary judgment in favor of a union and a company defending § 301 claims. The Seventh Circuit agreed with the district court's finding that the plaintiff employees of a closed plant could not show that the union breached its duty of fair representation by agreeing to a PCA that modified a pension plan agreement that was part of a CBA. 544 F.2d at 311. An important issue in *Dwyer* was that the Seventh Circuit found that the pension plan agreement included language that allowed for the modification of the plan "upon mutual agreement of the Company and the Union." 544 F.2d at 309. Thus, although the *Dwyer* decision was based on an analysis of the union's duty of fair representation, the Seventh Circuit found that a CBA could be amended by a subsequent PCA. In addition, although the defendant company announced its plant closing while the CBA was still in effect, the Seventh Circuit did not address whether such an initial disclosure of an intent to close gives rise to a § 301 claim when the union subsequently agreed to a PCA.

### III. Findings of Fact and Conclusions of Law

At the hearing, plaintiffs conceded that the employees in the Bargaining Unit of the UAW ratified the PCA at issue in this case. In addition, both plaintiffs and defendant agreed that the key issue before this court is whether the CBA could be amended by the PCA. Plaintiffs argued that despite the language in the CBA that states that the company and union could amend the CBA, general contract law principles prevent such an amendment. This court is not persuaded by this argument.

As plaintiff's counsel conceded at the hearing, the law allows unions and companies to freely amend CBAs. Furthermore, the CBA in this case contains specific language that allows the union and the company to amend the agreement. The employees at the Fayette Plant, through

their representatives in the UAW, chose to ratify the PCA and receive additional benefits in exchange for the closure of the facility. These actions were consistent with the CBA and with federal law. Thus, this court finds as a matter of law that the PCA is a valid agreement and that ArvinMeritor did not breach the CBA by closing the plant. Accordingly, this court will grant ArvinMeritor's Motion for Summary Judgment by separate order.

DONE and ORDERED this 7th day of November, 2002.

KARON O. BOWDRE
UNITED STATES DISTRICT JUDGE